IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LESLIE A. POWERS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:14-1570 |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

### I. Introduction

Plaintiff Leslie A. Powers ("Powers") brings this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. The matter is presently before this Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 13 & 16). The record has been developed at the administrative level.[1] For the reasons that follow, Powers' motion for summary judgment (ECF No. 13) will be denied to the extent that she requests judgment in her favor and granted to the extent that she asks for a remand, and the Commissioner's motion for summary judgment (ECF No. 16) will be denied.

### II. STATEMENT OF THE CASE

#### A. Procedural History

---

[1] All references to the administrative record, (ECF No. 4), will be cited in the following format: (R. at p. xx).

1

Powers filed an application for DIB on January 4, 2014, alleging that she had become "disabled" on November 5, 2010. (R. at p. 282). This application was initially denied on February 22, 2011. (R. at pp. 172-76). Powers responded on March 7, 2011 by filing a request for an administrative hearing, (R. at pp. 177-78), which was scheduled for March 7, 2012, (R. at p. 190).

The hearing was held on its scheduled date in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Joanna Papazekos ("Papazekos"). (R. at pp. 93-135). Powers testified at the hearing, represented by counsel. (R. at pp. 96-128). Tania Shullo ("Shullo"), an impartial vocational expert, also provided testimony concerning the expectations of employers existing in the national economy. (R. at pp. 129-34). In a decision dated April 18, 2012, the ALJ determined that Powers was not "disabled" within the meaning of the Act. (R. at p. 160). Following her receipt of the ALJ's decision, Powers filed a request for its review with Appeals Council on May 25, 2012. (R. at p. 226). On July 25, 2013, Appeals Counsel responded to Powers' request by vacating the ALJ's decision and remanding the case with detailed instructions as to how the record must be supplemented on remand. (R. at pp. 165-71). Among the requirements announced, the ALJ was to offer Powers a second administrative hearing. (R. at p. 170).

ALJ Papazekos held the second hearing on February 3, 2014. (R. at pp. 57-92). In addition to her own, Powers offered testimony from Michele Crochunis ("Crochunis"), her intensive service coordinator at the Staunton Clinic. (R. at pp. 84-91). Another vocational expert, Samuel Edelman, was present as well, but did not testify. (R. at p. 59). Following this hearing on April 25, 2014, ALJ Papazekos issued a 35-page decision, again denying Powers' claim. (R. at pp. 13-50). Powers requested Appeals Counsel review of this decision on June 24,

2014. (R. at p. 12). This request was denied on September 16, 2014, making the ALJ's decision the final decision of the Commissioner. (R. at pp. 1-3). Powers commenced the instant action on November 14, 2014, seeking judicial review of the Commissioner's decision. (ECF No. 1).

After the parties each gave consent to the adjudication of this matter by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (ECF No. 7), Powers and the Commissioner filed cross-motions for summary judgment on June 1, 2015 and July 1, 2015, respectively, (ECF Nos. 13 & 16). Each motion was accompanied by a supporting brief. (ECF Nos. 14 & 17). Powers also filed a concise statement of material facts along with her brief, (ECF No. 15), and subsequently filed a reply brief on July 15, 2015, (ECF No. 18). These pending motions for summary judgment are now ripe for disposition.[2]

### B. General Background

Powers was born on April 30, 1967, making her forty-three years of age at the alleged onset date of her disability. (R. at p. 97). She is a high school graduate who has attended "a little bit of college" and "completed a Travel Tech program." (R. at p. 99). She was member of the United States Army for a brief period, having been honorably discharged after approximately six months due to medical problems with her left knee. (R. at p. 100). Powers has past work experience as a data entry clerk, a customer service representative, a bookkeeper, and an accounts payable clerk, (R. at p. 129), although she has not worked since November 5, 2010, (R. at p. 101). She is divorced and lives with her two school-aged children. (R. at p. 98).

### C. Medical History

---

[2] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. Banks v. Shalala, 43 F.3d 11, 13-14 (1st Cir. 1994); Flores v. Heckler, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." Sumler v. Bowen, 656 F.Supp. 1322, 1330 (W.D. Ark. 1987).

Powers has a history of treatment for both physical and mental conditions. Physically, Powers experiences back and leg pain which has progressively worsened following an accident on August 23, 2007 when she was struck by a car. (R. at pp. 104-06, 467). An MRI report dated September 18, 2008 shows that she was suffering from a "disc extrusion at T12-L1 and a disc protrusion at L4-5." (R. at p. 402). When treatments including pain medications, thoracic medial branch blocks, and chiropractic were insufficient to address her pain, (R. at pp. 25-30), Powers was hospitalized for three days beginning on July 10, 2012, while she underwent an "L3-L4, L5-S1 transforaminal lumbar interbody fusion procedure," (R. at p. 929). After numerous complications stemming from this procedure, including an ongoing staph infection, she was hospitalized again on December 3, 2013 for "removal of hardware L3-S1 as well as lumbar irrigation and debridement and closure." (R. at p. 1122). Powers testified that her back and leg pain is worse following the surgery than it was prior to it. (R. at pp. 70-71).

With respect to her mental conditions, Powers testified that she has been suffering due to depression and bipolar disorder since 2002. (R. at p. 107). While she began engaging in individual therapy for her mental conditions at the Staunton Clinic ("Staunton") on April 12, 2011, (R. at p. 638), her prior treatment consisted solely of medication administered by her primary care physician, (R. at p. 646). Since the beginning of her treatment, Powers' treatment team at Staunton has consisted of James L. Saylor ("Saylor"), a licensed clinical social worker, and Dr. Phillip Dias-Mandoly ("Dr. Mandoly"), a psychiatrist. (R. at pp. 636-73, 710-25, 867-928). On average, Powers has seen Saylor for one hour every one to two weeks, while her meetings with Dr. Mandoly have generally been limited to fifteen-minutes, separated by three to five months. (Id.).

On February 16, 2012, Dr. Mandoly completed a Mental Residual Functional Capacity Questionnaire ("MRFC") regarding Powers. (R. at pp. 683-88). In it, he presents a diagnosis of "Bipolar II D/O". (R. at p. 683). Through primarily the use of checkmarks, Dr. Mandoly opines that Powers would be "unable to meet competitive standards"[3] in several areas. Among others, the affected areas include "maintain[ing] attention for [a] two hour segment," "get[ting] along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," and "deal[ing] with normal work stress." (R. at p. 685). Dr. Mandoly also represented that Powers has "no useful ability to function"[4] with respect to "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms" and "performing at a consistent pace without an unreasonable number and length of rest periods." (Id.). Finally, he asserted that Powers would miss "more than four days per month" of work due to her psychological limitations. (R. at p. 687).

**D.    The Administrative Hearings**

At the first administrative hearing on March 7, 2012, Powers testified extensively about the effects of her physical and mental conditions. (R. at pp. 97-128). Following her testimony, Shullo was questioned about the ability of a hypothetical individual to perform Powers' past work and other work existing in the national economy. (R. at pp. 129-34). Based on Shullo's responses, the individual specified would be incapable of performing Powers' past work, but could perform the jobs of mail clerk, marker, and sorter. (R. at pp. 130-31). However, the ALJ's formulation of the hypothetical individual included no limitations related to either interacting

---

[3]   "Unable to meet competitive standards" is defined to mean that the "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (R. at p. 685).

[4]   "No useful ability to function" is defined as "an extreme limitation, . . . [the] patient cannot perform this activity in a regular work setting." (Id.).

with co-workers or normal work stress. Further, Shullo specifically testified that the hypothetical individual could not miss, on average, more than half a day to one day per month in order to maintain employment. (R. at p. 131).

Much of Powers' testimony during the February 3, 2014 administrative hearing was related the question of whether she had engaged in substantial gainful activity beyond her alleged date of disability onset, one of the concerns of Appeals Counsel on remand. (R. at pp. 61-68, 78-84). However, she did offer some testimony as to the state of her physical and mental conditions since the date of the prior hearing. (R. at pp. 68-78). Specifically with respect to her mental conditions, Powers explained that she is "much more depressed now," following her back surgery. (R. at p. 75). This hearing was closed following testimony offered by Crochunis concerning her interactions with Powers as an intensive service coordinator through Staunton. (R. at pp. 84-91).

### E. The ALJ's Opinion

After consideration of the above, ALJ Papazekos determined that Powers was not "disabled" within the meaning of the Act. (R. at p. 50). The ALJ determined that Powers had the following severe impairments: "degenerative disc disease with radiculopathy; osteopenia; status-post fusion with complications; major depression; and bipolar disorder." (R. at p. 20). Based on these impairments, the ALJ determined that Powers has the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR § 404.1567(b); however, she cannot engage in tasks requiring bending, twisting, crawling, or climbing of any kind as part of the job. In addition, she requires a sit/stand/walk option such that she is confined to one position for no more than thirty to forty-five minutes at a time before alternating to a different position. She requires simple, routine, repetitive, unskilled work in a stable work environment where work processes and the workplace setting remain the same.

6

> She cannot make decisions outside of fixed parameters and cannot
> be exposed to contact with the public.

(R. at pp. 21-22). Based on this RFC, the ALJ determined that Powers could not perform any past relevant work. (R. at p. 48). However, apparently based on testimony by Shullo during the first administrative hearing, Powers could perform jobs existing in significant numbers in the national economy, including mail clerk, marker, and sorter. (R. at p. 49).

In determining which of her medically determinable functional limitations to incorporate into the RFC, ALJ Papazekos found that Powers "simply cannot be considered a reliable witness and that any opinions which rely on her purported symptomatology must be subject to heightened scrutiny." (R. at p. 41). The ALJ found "[m]ost troubling . . . the discrepancy between the symptoms and lifestyle as reported when seeking treatment for back pain as compared to the activities and lifestyle reported during the same time period to those who were treating [her] for mental impairment." (Id.). In further support of ALJ Papazekos' assessment of Powers' credibility, the ALJ also detailed what she referred to as "a pattern of drug-seeking behavior." (R. at p. 42).

Specifically with respect to Powers' alleged mental limitations, the ALJ "accorded little weight" to Dr. Mandoly's opinions that Powers is unable "to interact with others successfully or engage in a normal work routine." (R. at p. 47). Despite his "longitudinal treating relationship" with Powers, ALJ Papazekos justified her handling of his opinions by noting that "they appear to rest heavily on subjective assertions" and by pointing to the lack of "objective clinical findings which would support a finding of disability." (R. at p. 46). She also questioned the reliability of his opinions because "his treatment notes reflect very little in the way of actual symptoms and

7

indicate a bewildering tendency to abruptly change course without explanation of comment."[5] (Id.). In deciding to discount the weight of Dr. Mandoly's opinions, the ALJ pointed to no other medical opinion evidence of record related to Powers' mental impairments which was entitled to greater weight. (Id.).[6]

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set

---

[5] The "abrupt change" ALJ Papazekos refers to here is the fluctuation of Powers' primary diagnosis between "Major Depressive Disorder" and "Bipolar II" and back again twice throughout Dr. Mandoly's treatment notes. (R. at p. 46).

[6] Aside from Dr. Mandoly's treatment notes, the medical evidence in the record related to Powers' mental impairments consists of only Saylor's treatment notes, Crochunis' testimony, and the one-word and otherwise unsupported assertion of Margel Guie ("Guie"), a state agency medical consultant, that Powers' mental impairment is "non-severe". (R. at p. 47 (citing (R. at p. 139))). ALJ Papazekos held that neither Saylor nor Crochunis was "an acceptable medical source," and that there was no evidence that Guie is "an appropriate mental health specialist" or that the assertion of a "non-severe" impairment was the product of an "evaluation using the criteria mandated by Social Security with respect to the evaluation of mental impairments." (Id.).

8

aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. She must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find nondisability

> unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947) (if the "grounds [relied on by the agency] are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). The Third Circuit Court of Appeals has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n.7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

**IV.    Discussion**

In support of summary judgment in her favor, Powers argues that the ALJ improperly rejected the opinion of Powers' treating psychiatrist in favor of only the ALJ's lay interpretation of the evidence. This Court agrees.

### A. The ALJ improperly handled Dr. Mandoly's medical opinion evidence

"In making a residual functional capacity determination, the ALJ must consider all evidence before [her]." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). When weighing this evidence, "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

A treating physician's "opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (quoting Plummer, 186 F.3d at 429). However, the ALJ "is not free to employ her own expertise against that of a physician who presents competent medical evidence." Id. Thus, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429).

Here, in the MRFC he completed on February 16, 2012, Dr. Mandoly offered specific medical opinions about the nature and severity of Powers' mental impairments. (R. at pp. 683-88). ALJ Papazekos provided a lengthy explanation as to why she "accorded little weight" to these opinions. (R. at pp. 45-48). While this explanation may have been sufficient to justify according greater weight to some contradicting medical opinion evidence, there is no such evidence in the record. In reality then, the "little weight" accorded to Dr. Mandoly's assessment actually amounts to the ALJ's rejection of his medical opinions in favor of "her own credibility judgments, speculation or lay opinion," and therefore was improper. Morales, 225 F.3d at 317.

The Commissioner argues against this finding by pointing to the distinction between an ALJ's assignment of less than controlling weight to, and her complete rejection of, medical opinion evidence. (ECF No. 17, at pp. 11-14). Noting that ALJ Papazekos only declined to assign Dr. Mandoly's MRFC "'controlling weight,'" (id. at p. 11 (quoting R. at p. 46)), the Commissioner asserts that "'an ALJ is not bound to follow a medical opinion simply because it is provided by a treating physician,'" (id. at p. 14 (quoting Nichols v. Comm'r of Soc. Sec., 404 F. App'x 701, 704 (3d Cir. 2010))). Despite the accuracy of this premise, it is inapplicable the instant facts.

It is true that a "treating source's opinion is entitled to controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record.'" Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 (3d Cir. 2008) (quoting Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2))). Otherwise, the ALJ is free to assign another medical opinion greater weight, so long as a sufficient explanation is offered for doing so. See Brownawell, 554 F.3d at 355. However, when the record contains only one medical

opinion concerning a claimant's mental limitations, it will continue to be the most heavily-weighted medical opinion on that topic no matter what weight is assigned to it. Given this reality, the failure to incorporate limitations set forth by a treating physician in the absence of contradictory medical opinion evidence amounts to an improper rejection of the treating physician's medical opinion, regardless of the question of weight. See Morales, 225 F.3d 317.

The Commissioner also asserts that ALJ Papazekos was correct to disregard Dr. Mandoly's MRFC by characterizing it as a "'check-box assessment of marked mental limitations in functioning contain[ing] no accompanying clinical findings, narrative report, or adequate explanation.'" (ECF No. 17, at p. 13 (citing R. at p. 46)). This argument once again fails to consider that this was the only medical opinion evidence in the record related to Powers' mental limitations. While "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best," Mason, 994 F.2d at 1065, Dr. Mandoly's MRFC is still the strongest piece of medical opinion evidence as to the nature and severity of Powers' mental impairments in the record. As the limitations set forth within Dr. Mandoly's MRFC could not be rejected without contradictory medical opinion evidence, Morales, 225 F.3d 317, the ALJ erred by failing to credit them.

In her final argument, the Commissioner contends that the RFC formulated by the ALJ was proper even though there was no medical opinion to contradict Dr. Mandoly's assessment. (ECF No. 17, at p. 12-13). In support of this argument, she notes that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." (Id. at p. 13 (quoting Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006)). As such, the ALJ did not have to "prove non-disability by creating evidence that contradicts Dr.

13

[]Mandoly's check-box assessments," before fashioning an RFC which failed to accommodate them. (Id. at p. 12). This argument is based on a misreading of Titterington.

In Titterington, the Third Circuit Court of Appeals held that the ALJ properly formulated an RFC including sedentary work, despite the claimant's physician's findings that he could not work full-time and "could not work at substantial and gainful employment." 174 F. App'x at 8, 11. This holding is entirely consistent with the Act's regulations, which explain that opinions concerning a claimant's ability to work or her RFC are "not medical opinions," because they are "opinions on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d). However, statements "about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions" are "medical opinions" which must be weighed and considered according to the rules discussed above. 20 C.F.R. § 404.1527(a)(2). As such, while "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC," Titterington, 174 F. App'x at 11, a physician's medical opinion on a matter not reserved to the Commissioner must be properly considered, Morales, 225 F.3d 317.

Here, Dr. Mandoly's MRFC specifically spoke to Powers' inability to get along with co-workers and deal with normal work stress in a regular work setting. (R. at p. 685). He also asserted that Powers' impairments would cause her to be absent from work more than four days per month. (R. at p. 687). As these statements speak to what Powers can do despite her mental restrictions, they are medical opinions that must be considered by the ALJ. See § 404.1527(a)(2). Because this medical opinion evidence was improperly rejected by the ALJ and the referenced limitations were not addressed by the RFC in any way, the ALJ's decision that

14

Powers is capable of performing other work that exists in the national economy is not based on substantial evidence. Remand is warranted on this basis.

On remand, the ALJ is instructed to order a mental consultative examination of Powers. The ALJ must determine what weight to assign to the results of that examination to and Dr. Mandoly's February 16, 2012 MRFC, fully explaining the underlying analysis. Considering all medical opinion evidence of record related to Power's mental impairments, the ALJ then must decide whether the RFC should be reformulated to address additional mental limitations. Altering the RFC in any way would necessitate that the ALJ reengage in step five of the sequential evaluation process based on the new RFC. Should Powers fail or refuse to take part in the consultative examination without offering a good reason for doing so, the ALJ may find that she is not disabled. See 20 C.F.R. § 404.1518.

## V. Conclusion

For the foregoing reasons, Powers' motion for summary judgment (ECF No. 13) will be denied to the extent that she requests judgment in her favor and granted to the extent that she asks for a remand, and the Commissioner's motion for summary judgment (ECF No. 16) will be denied.

The decision of the Commissioner will be vacated and the case will be remanded for further administrative proceedings consistent with the foregoing opinion.


Dated: July 29, 2015            s/Lisa Pupo Lenihan
                                           LISA PUPO LENIHAN
                                           U.S. Magistrate Judge

cc:      All Counsel of Record